Cox, J.
The petition in this case was filed by the city solicitor on behalf of Alfred Yaple, a tax-payer of the city, to obtain an injunction against the board of police commissioners, to restrain them from paying certain attorneys’ fees to Thomas McDougall and C. B. Matthews, claiming that said payment would be a misapplication of the funds of the corporation. It claims, that, on the 3d day of June, 1886, said board passed the following resolutions:
“On motion of Mr. Dodds, it was voted that Mr. Topp be appointed a committtee of one, with power to act, to consult and employ Mr. Thomas McDougall and such other attorney of opposite politics, to be agreed upon by Mr. Topp and Mr. McDougall, for the purpose of making a test'case, in order to test the constitutionality of the Dow law.
That in pursuance of said resolution, the board employed Thomas McDougall and C. B. Matthews as attorneys, to render legal services for the purpose mentioned in said resolution, and as plaintiff is informed and believes, and alleges as a fact, *407 has agreed to pay them from the funds of the corporation, for such service, a large sum of money, the exact amount- of which plaintiff is unable to state.
He alleges that said, employment is contrary to law, and that the payment of money from the lunds of the corporation, would be a misapplication of the funds of the corporation, and that defendants will pay it, unless restrained by this court, and prays for an injunction to restrain such payment.
To the petition defendants answer, setting forth that they were duty appointed police commissioners, by the G-ovenor of Ohio, under the act “ to establish an efficient and non-partisan police, in cities of the first grade of the first class,” passed and took effect March 30th, 1886.
That for the year 1886, after the tax commissioners of Cincinnati had finally revised and approved the estimates, the sum of $280,000 was set out for the purpose of defraying the expenses oí the police department of said city, and that as the estimate for the six months, commencing on the 1st of January, 1886, the sum of $24,000 a month, and the sum of $144,000 in the aggregate, was set appart for the use of the police department, but that for the second six months of the year 1886, owning to the delinquent taxes and deficiency arising from the collection of taxes, instead of one hundred and forty-four thousand dollars, as set out by the tax commissioners, the sum of $133,000, only was set aside for the use of the police fund, and that with this fund at the disposal of the board of police commissioners, it was impossible to even maintain the department up to the required standard of three hundred patrolmen, and that the funds at the control of the commissioners, would only reach to pay about 190 patrolmen for the ensuing six months. That by the provisions of the act of the general assembly of the state, which passed and took effect May 14th, 1886, entitled “an act providing against the evils resulting from the trafficin intoxicating liquors,” the money collected under said law was appropriated as follows: One-half of the three-fourths, upon the warrant of the county auditor, to be paid into the treasury of such corporation, to the credit of the police fund, and that said income derived from said act, was essential to the maintenance of the police force, under the control of the defendant, and necessary to enable them to discharge. *408 the duties incumbent on them as police commissioners ; that immediately after the passage of said act, the parties liable for said assessment, declared it their purpose to refuse to pay said assessment until the question of the constitutionality of ¡said act was settled by the supreme court of Ohio.
That defendants, as such police commissioners, desiring to have said question settled, so as to enable them to recover said sum for the maintenance of said police force, and in order to protect said revenue and to secure it for the purpose for which it was appropriated by law as aforesaid, employed Thomas McDougall and C. B. Matthews to maintain the constitutionality of said act; that said McDougall and Matthews, in pursuance of said employment rendered valuable services in a test case prepared for the purpose of having the constitutionality of said act determined, long before the filing of the petition herein, and one of said test cases has been entered in this court, appealed to the circuit court, and disposed of in that court, and entered in the supreme court, long before the filing ■of the petition and granting the injunction; and they say they are authorized by said act, and have the power to make said contract, and the making of the same was necessary to the discharging the duties conferred on them by said act, and to the protection of the funds appropriated to the benefit of said police department.
To the answer there was a general demurrer, which was sustained by the court below, and the defendants, not desiring to plead further, a perpetual injunction was granted to plaintiff.
It is claimed on the part of the plaintiff, that the fund out of which it is proposed to pay the attorneys elected by the board of police commissioners, is city funds; that the city solicitor, or the county solicitor, is the only attorney authorized to appear for said board, and that they have no other authority under the law to employ any other attorney.
To this it is replied by the defendant that they are not city officers; that the police fund is not the fund of the corporation; that they were appointed by the governor of the state, and are but an arm of the state for the preservation of the peace and to execute general police powers in the city of Cincinnati; that a large portion of the funds to come into their hands, for the maintenance of the police of said city would be derived *409 from the taxes levied on the liquor sellers under what is called the Dow law ; and that a certain amount had been levied by the tax commissioners for the support of the police, which embraced the liquor tax, which was a very large sum. That the persons liable to pay the assessment had refused to pay it until the supreme court should decide the law to be constitutional, and that to secure that fund, it became necessary to bring a case in the supreme court to test that question, and that it was incidental to their powers as a police board; that neither the city nor the county solicitor was made by law their attorney, nor in the nature of things could act for them, and it was their duty to employ independent counsel.
For the solution of these questions it is necessary to look at the act constituting the police board; and those defining the duties and powers of the city and county solicitor.
By section 1774, the city solicitor shall, whenever required so to do by resolution of the council, prosecute or defend, as the case may be, for and on behalf of the corporation, all complaints, suits and controversies in which the corporation is a party, except in cases before the police court.
Section 1775: “When an officer of the corporation enter-, tains doubts concerning the law in any matter before him in his official capacity, and desires the opinion of the city solicitor, he shall clearly state to the solicitor in writing the question upon which the opinion is desired, and thereupon it shall be the duty of the city solicitor to reply in writing or orally in a reasonable time; and this right applies to the city council and to each board provided for in title 12 of this act.” By section 1781, “No additional counsel shall be appointed or employed at the expense of the corporation, except by resolution of the council adopted for that purpose, specifying the case in which such additional attorney is employed, the reason therefor, and may fix the compensation to be paid.”
It will be seen by examining these acts, that the cases and the officers for whom the city solicitor shall appear, are, when required by resolution of the city council, for and on behalf of the corporation, in all complaints, suits and controversies, in which the corporation is a party (except in the police court); and to give advice and opinion to the city council and any officer or board of a corporation, on application in writing.
*410 It is not claimed by plaintiff that the city council, by resolution, ordered the city solicitor to bring or appear in any suit on behalf of the corporation, nor that any advice was required by any board of the city upon the matter. But, it is claimed, that the police board is a city board, and is bound to apply to .the city solicitor, and that no other attorney could be employed, except, under sec. 1781, by act of the city council.
Is the police board a board of the municipal corporation of Cincinnati ?
By the statute, as it appears in the first volume of the Revised Statutes, beginning at sec. 1870, all police powers are vested in it, and although first appointed .by the governor, provision was made by sec. 1870, for the election by the people of successive members, as vacancies should occur. This board was created under title 12, and by sec. 1775. The right was given to said board to apply to the city solicitor for an opinion.
But this act was repealed by the act of 1886, entitled, “ An act to establish an efficient and non-partisan police in cities in first grade of the first class.”
By this act it was evidently intended to take this board out of the line of city boards, and make it an arm of the state for police jurisdiction within the territorial limits of Cincinnati. This is evident from the first section of the act, which provides for the appointment of its members by the governor, and prescribes that not more than, two of them shall be of the same political party, and as vacancies occur, to be filled by the governor, and subjects them to removal by the governor for official misconduct. So that neither in their appointment, nor for their officicial acts, are they subject to the control of the municipal corporation.
That the state has general control of police matters is well settled in the case of the Western College v. The City of Cleveland, 12 Ohio St., 375-377. The court says, “It is the duty of the state government to secure to citizens of the state the peaceful enjoyment of their property and its protection from wrongful and violent acts. For the proper discharge of this duty, power is delegated in different modes. One of these is the establishment of municipal corporations. Powers and privileges are also conferred upon municipal corporations, to be exercised for the benefit of the individuals of whom such corpora *411 tions are composed ; and in connection with these powers and privileges, duties are sometimes specifically imposed. It is obvious that there is a distinction between those powers delegated to municipal corporations to preserve the peace and protect persons and property, whether to be exercised by legislation or the appointment of proper officers, and those powers and privileges which are to be exercised for the improvement of the territory comprised within the limits of the corporation, and its adaption to the purposes of residence or business. As to the first, the municipal corporation represents the state— discharging duties incumbent on the state; as to the second, the municipal corporation represents the pecuniary and proprietary interest of individuals.”
So, had this act vested the police powbr in the city of Cincinnati, the corportion for that purpose would represent the state. But this act vests that power in a board appointed and controlled by the governor, and .that board, thus appointed, “ represents the state, discharging duties incumbent on the state to secure to citizens of that particular jurisdiction the peaceable enjoyment of their property and its protection from wrongful acts and violence.” It is, as held in the case of the fire department, Wheeler v. The City of Cincinnati, 19 Ohio St., 22, “ a delegated quasi sovereignty,”.and the same principle was applied to the case of a school board in 37 Ohio St., 37. The same doctrince was elaborately held in the case of county commissioners; Commissioners of Hamilton County v. Mighels, 7 Ohio St., 109 and following.
We must, therefore, hold that these commissioners are not officers of the municipal corporatien, but a body appointed by the governor, by authority of the legislature, as an arm of the state for police purposes, and as such had a delegated quasi sovereignty independent of control by the city except as limited by the act creating them. By their oaths of office, they are to support the constitution of the United States and the state of Ohio, to obey the laws, and in all their official actions and judgment to aim only to secure an honest and efficient system of police, free from partisan dictation or control. They are disqualified during their term of office from accepting any other place of public trust or emolument, or knowingly consenting to a nomination for an office elective by the *412 people, and are compelled to decline any such honor within ten days, or forfeit their appointment. They designate the days and place for holding their sessions, chose their own president and clerk. They may, by sec. 1894, incur expense by erecting buildings, for rent, repairs, advertising, printing, stationery, postage stamps, telegrams, fuel, lights, feeding prisoners, clubs, whistles, badges, and such other incidental expenses as may be necessary to carry out the provisions of this section, subject only to the restrictions herein provided, and on the recommendation of the mayor shall have power to appropriate money to pay the same out of the police fund. And on an order signed by the president and countersigned by the clerk of the board, for money, payable to the person to whom it is due, being presented to the city comptroller, it is made his duty to immediately draw a warrant on the city treasurer for its payment out of the police fund. Being thus, as is held, but an arm of the state, for the performance of the duties of the state, they are not municipal officers for whom the law provides the city solicitor as their attorney or counsel.
What is the police fund? It is claimed by the plaintiff that it is the funds of the city. But is this so ? Is it not also the means, however obtained, provided by the state to carry on its duty through the commissioners, to protect the peace and property of the city? One portion of it is derived from a taxation of the property of the city on an estimate made by the mayor and approved by the board, reported to the comptroller and submitted to the committee of finance of the common council. And when collected, sec. 1893, such funds shall be certified to the city'' treasurer by the comptroller, as the police fund, and shall be held by the treasurer as other city funds, subject only to the order of the police commissioners as herein provided.
Another portion of it is derived from the tax collected under the act of May 14, 1886, from the traffic in intoxicating liquors. By that act, sec. 9, three-fourths of the tax paid into the county treasury on account of business carried on in a city, shall upon the warrant of a county auditor, be paid into the treasury, one-half to-the credit of the police fund.
So that we have the state exercising its sovereignty in proiding a police fund, and designating a board for the distribu *413 tion of it, to perform a duty which the supreme court in 12 Ohio St., above cited, say, is a duty of the state government to secure to citizens of the state within a particular territory enjoyment of their property and protection of their person and property.
Now, then, can this be said to be, “funds of the corporation” within the meaning of sec. 1777, for which plaintiff may apply to a court for injunction ? We think not. It is the police fund of the state for the territory of the city. The treasurer is but the depositary of the state for that fund, and it can only be paid out by him for purposes necessary or incidental to police matters on the proper order of that board.
It is scarcely necessary to state that the county solicitor is not the attorney Tor this board. By sec. 1001, 81 Ohio L„ 1934, that officer is made the legal adviser of the boards of county commissioners and control, and shall prosecute and defend all suits and actions which either of said boards may direct or to which they may be a party; and by sec. 2862, he shall take charge of and attend to any action which may be commenced against a county treasurer, or county auditor, or other county officer for performing, or attempting to perform, any dutjr authorized by or directed by any statute or statutes of the state for the collection of a public revenue.
To show more clearly that neither the city nor county solicitor was intended by the law to act for the police commissioners, let us take a case. Suppose the comptroller should refuse to draw a warrant on the treasury, upon an order of the commissioners, and it became necessary to compel him by writ of mandamus ? The city solicitor could not act in such a case, for the law makes him the attorney of that officer. Or if it became necessary to compel the treasurer or auditor of the county to enforce the Dow law, the county solicitor could not act for them, for he is subject to the order of the county commissioners and board of control as to the parties for whom he shall appear.
No special provision being made by law for counsel for these commissioners, may they employ such in a matter which in their judgment is necessary to carry out the duties of their office properly^? The statute prescribes their duty. It is, “ to secure, and maintain an honest and efficient system of *414 police force, free from partisan dictation or control.” To do this, the law presumes funds are necessary, and provides how they shall be raised.
Alfred Yaiph,. for plaintiff.
T. McDougall and, O. B. Matthews, for defendants.
Two sources of revenue are provided, one a tax on general property, the other a specific tax on a business. By the answer of defendants, the proper authority, at the proper time, estimated the amount necessary to be realized from both sources. But before the time arrives for the collection of the latter, it is well known that it will not be paid until the question has been decided by the supreme court, that its collection is constitutional. It is true, as claimed, that the collection of this tax was cast by the law upon other officers. But in their judgment, to wait for such action was largely, for the time,' to diminish the police force, and deprive them of the anticipated revenue to pay them. They might have sat still and let the time arrive for voluntary payment, and then wait until other officers proceeded by restraint or otherwise to collect it; but in the meantime they would have been unable to “ maintain and secure an effective police force.” The emergency had arisen in which, as they conceived, action at once was necessary to put the machinery of the law in process for speedy adjudication by the supreme court; and the sooner begun, the sooner (if the law were held constitutional), would the necessary funds come under their control for the payment of the police. We think this action was proper; that the test suit was one which materially hastened the decision of the question and brought the funds speedily under their control; and that the employment of counsel was a necessity incidental to carrying out the provisions of the law, defining their duties, and as such, it necessarily follows, that they may, out of the police fund, direct a payment of reasonable counsel fee.
The judgment of the court of common pleas will therefore be reversed.
Plaintiff then presented to the court, a reply, which he desired to file. But on examination, the court was of the opinion that it raised.no new issue in the.case, and refused to permit it to be filed, and ordered the petition of plaintiff to be dismissed.
Smith and Swing, J.J., concur.