**J. TOM WATSON, as Attorney General of the State of Florida, v. MILLARD F. CALDWELL, as Governor of the State of Florida, as Trustee of the Internal Improvement Fund; J. M. LEE, as Comptroller of the State of Florida, as Trustee of the Internal Improvement Fund; J. EDWIN LARSON, as Treasurer of the State of Florida, as Trustee of the Internal Improvement Fund, and NATHAN MAYO, as Commissioner of Agriculture, as Trustee of the Internal Improvement Fund.**

27 So. (2nd) 524
October 4, 1946
Rehearing denied November 1, 1946.

June Term, 1946
En Banc

*J. Tom Watson,* Attorney General, *Lamar Warren* and *Sumter Leitner,* Assistant Attorneys General, for appellant.

*Parker & Foster, Julius F. Parker, Leo L. Foster* and *T. T. Turnbull,* for appellee.

BUFORD, J.:

Honorable J. Tom Watson as Attorney General for the State of Florida, filed his amended bill of complaint against the defendants, describing them as they are described in the caption hereof.

The defendants filed motion to dismiss the amended bill of complaint and, among other things, pointed out that the defendants were improperly joined in their several capacities as Governor, as Comptroller, as Treasurer and as Commissioner of Agriculture in the suit brought to enjoin the action of those respective officers acting in their capacity as members of the Trustees of the Internal Improvement Fund of Florida. This contention was not adjudicated by the Chancellor as he disposed of the motion on other grounds. We may say in passing, however, that this contention is well founded. The respective administrative officers constituting the Trustees of the Internal Improvement Fund of Florida when functioning as such Trustees of the Internal Improvement Fund of Florida, do not do so under the powers and duties conferred upon them as administrative officers of the Executive Department of the State Government but they perform these functions under authority conferred on them by statute as constituting the Trustees of the Internal Improvement Fund.

The Trustees of the Internal Improvement Fund of Florida are a Board which can act only by and with the concurrence of a majority of its members. A majority of the members of

the Trustees of the Internal Improvement Fund of Florida when regularly convened in official session may lawfully act on matters within their jurisdiction and action of such majority will be deemed to be the action of the Trustees of the Internal Improvement Fund of Florida. See Hicks v. State ex rel. Landis, as Attorney General, et al., 116 Fla. 603, 156 So. 603.

The amended bill of complaint sought to enjoin the defendants acting as Trustees of the Internal Improvement Fund of Florida, from employing special counsel to represent the Trustees in matters concerning the performance of their duties as such governmental agency and to compel the Trustees to accept the services of the Attorney General as the legal adviser and legal representative of the said Trustees.

The contention of the Attorney General is that under the provisions of Sec. 16.01, Fla. Statutes 1941 (same F.S.A.) and Sec. 22 of Article IV of the Constitution he is the lawfully designated legal adviser and legal representative of the Trustees of the Internal Improvement Fund.

The learned Chancellor dismissed the bill of complaint and in his order recited, inter alia, as follows:

"While the trustees are now, and have for many years been, exclusively the Governor and Members of his Cabinet, this has not always been the case. Probably the first statute establishing the Trustees is Chapter 332, Laws of Florida, Acts of 1850, under which the Board was made up partly of Constitutional Government Officials, acting ex-officio, and partly of trustees selected by the Legislature.

"The duties and functions of the Trustees are the administration of a large and varied trust for the benefit of the State and its inhabitants. Their functions, however, are more proprietary than governmental. There is no Constitutional reason why the Trustees should not be appointed by the people as separate and distinct officials, devoting their entire time to the administration of the trust.

"It has been the practice of the Trustees at least since 1860 to use from time to time as their judgment dictated, three methods of securing legal service:—The services of the Attorney General have been used; special counsel have been re-

tained on a salary basis; and special counsel have been employed for specific items of work.

"Prior to the adoption of the Constitution of 1885, it seems to have been the practice for the trustees at times to pay extra compensation to the Attorney General for legal services rendered to them by him. This practice was stopped under that Constitution. (Sec. 29, Art. 4).

"Until the present suit was instituted, it seems also to have been accepted that there was no necessary connection between the Attorney General's Office and that of the Attorney for the Trustees. For example the Minutes of May 7th, 1872, show that the Attorney General was 'constituted' the attorney for the trustees, thus indicating that the Board deemed it necessary for it to designate the Attorney General as its Attorney before he became Attorney for the Board. On January 6th, 1874, it appears that the then Attorney General resigned as Attorney for the Trustees and another lawyer was appointed in his place.

"Among those who have acted as retained or salaried counsel for the Trustees appear such names as Hon. George P. Rainey (Ex-Supreme Court Justice), Hon. W. H. Ellis (later Supreme Court Justice), Hon. Glenn Terrell (Now Supreme Court Justice), Hon. John B. Johnson (Later, Attorney General and Circuit Judge). These able jurists evidently consider their employment legal and the payment of their salaries a proper expenditure of public moneys. It is interesting to note that when Judge Johnson became Attorney General, he retired as Attorney for the Trustees and was succeeded by Mr. Marvin McIntosh. In the past, two Attorneys General seem to have sought to take jurisdiction in connection with the legal business of the Trustees. Judge West, when Attorney General, voted against the employment of special counsel for the Trustees, but when over-ridden by the majority, he offered a resolution fixing the salary for the Attorney for the Trustees. This would indicate that he did not consider the employment illegal or the payment of the salary an unlawful expenditure of State money.

"When the Hon. Cary D. Landis became Attorney General, the question was compromised by an arrangement under

which the then Attorney for the Trustees was appointed Assistant Attorney General and his salary paid by the trustees. Subsequently, this attorney was transferred from the payroll of the Trustees to the payroll of the Attorney General's office.

"It thus appears that for more than 80 years during the administration of many Governors who were able lawyers, during the tenure of many able Attorneys General, and during the period when the frame work for the administration of the government and business of the State was being developed, it was the practice of the Trustees, if, as and when they considered it to the best interests of the trust which they administered, to employ special counsel, and this, apparently without any question being raised as to the validity of such appointment or the legality of payment of retainers and salaries.

"An Administrative construction of the Constitution generally accepted and acted upon over a long period of years is entitled to great weight in a judicial interpretation of the Constitution. (State v. Butler, 69 So. 771; Okanogan Indians v. United States, 279 U.S. 655; 73 Law Edition 894; 49 Supreme Court 463; 64 ALR 1434; 11 AJ 697).

"Prior to the adoption of the Constitution of 1885, the Constitutional duties of the Attorney General were practically the same as those stated in the Constitution of 1885. (Constitution of 1868, Article 7, Sec. 3).

"Under this Constitution the Board when it employed the Attorney General as its legal advisor, at least on some occasions, paid him additional compensation for his services rendered to the Board, but the Board frequently used the services of other counsel.

"When the Constitution of 1885 was adopted, it must be assumed that the framers of the Constitution knew of this practice. Yet, they did not in specific terms, make the Attorney General the legal advisor for the Trustees or any other Department of the State Government except, 'The Governor and each of the Officers of the Executive Department,' although they provided in Section 29 of Article 4, that no administrative officer of the Executive Department should receive additional compensation beyond his salary for any

services rendered the State in connection with the I. I. Fund or other interests belonging to the State. Had the framers of the Constitution intended that Section 22 of Article 4 should make the Attorney General the exclusive legal advisor of all State offices, Boards and Commissions, it would have been a simple matter to have so stated. This was not done."

Section 22 of Article IV of our Constitution is as follows:

"Attorney General, duties, etc.—

"The Attorney General shall be the legal advisor of the Governor, and of each of the officers of the executive department, and shall perform such other legal duties as may be prescribed by law. He shall be Reporter for the Supreme Court."

Section 16.01 Fla. Statutes 1941 is as follows:

"Residence, office and duties of Attorney General.—

"The Attorney General shall reside at the seat of Government, and shall keep his office in a room at the Capitol; he shall perform the duties prescribed by the Constitution of this State, and also perform such other duties appropriate to his office, as may from time to time be required of him by law, or by resolution of the legislature; he shall, on the written requisition of the Governor, Secretary of State, Treasurer, or Comptroller, give his official opinion and legal advice in writing on any matter touching their official duties; he shall appear in and attend to in behalf of the state, all suits or prosecutions, civil or criminal, or in equity, in which the State may be a party, or in anywise interested, in the Supreme Court of this State; he shall appear in and attend to such suits or prosecutions in any other of the courts of this state, or in any courts of any other state, or of the United States; He shall have and perform all powers and duties incident or usual to such office, and he shall make and keep in his office a record of all his official acts and proceedings, containing copies of all his official opinions, reports and correspondence, and also keep and preserve in his office all official letters and communications to him, and cause a registry and index thereof to be made and kept, all of which official papers and records shall be subject to the inspection of the Governor of the State, and to the disposition of the Legislature by act or resolution thereof."

So it appears to be clear from a reading of the provision of the Constitution, supra, and of the provisions of Sec. 16.01, supra, as is stated by Mr. Justice TERRELL in Holland et al. v. Watson, 153 Fla. 178, 14 So. (2nd) 200, that "The duties of the Attorney General of Florida are set out in Section 22 of Article IV of the Constitution and Section 16.01 Fla. Statutes of 1941" and in that opinion Mr. Justice TERRELL, speaking for the Court said further:

"Summarized, Section 22 of Article IV of the Constitution makes the Attorney General the Advisor of the Governor; each officer of the Executive Department, the Supreme Court Reporter, and then clothes him with 'such other legal duties as may be prescribed by law.' Section 16.01 Florida Statutes 1941, was designed to embrace 'such other legal duties as may be prescribed by law.' They may be epitomized as follows: (1) Such duties as the Constitution and the Legislature lay on him, (2) His duties as legal advisor to the officers of the Executive Department, and (3) His duty as to litigation in which the State is a party or is otherwise interested. Some confusion exists in briefs of counsel as to who the 'officers of the Executive Department' are but the Constitution concludes this in that it provides that the Governor shall be assisted in the performance of his duties by the following administrative officers: Secretary of State, Attorney General, Comptroller, Treasurer, Superintendent of Public Instruction and Commissioner of Agriculture. Such are the 'administrative officers of the Executive Department' that the Attorney General is required to advise under the provisions of the statute and Constitution as quoted. Sections 20 to 28, Article IV, Constitution of Florida."

This brings us to the conclusion that there is nothing in the law as reflected either in the statutes or the Constitution of Florida which requires the Attorney General to act as Attorney or counsel for the Trustees of the Internal Improvement Fund. Having reached this conclusion, the only question that we are required to determine is whether or not the Trustees have authority to employ counsel or an attorney to advise and represent such Board of Trustees.

The law appears to be well settled that as a general rule

the power to employ counsel is not deemed incident to the mere existence of an administrative Board or Commission and does not exist unless it be expressly conferred or *results* by *necessary implication* from the powers granted. See 2 A.L.R. 1209. But it is well established that the power to employ counsel is implied if the authority is incident to, or can be necessarily inferred from, the other designated duties and powers. See Simrall v. Covington, 16 Ky. L. Rep. 770, 29 S.W. 880; Freeman v. Brooks, 29 Misc. 719, 62 N. Y. Supp. 761; Quintard v. N.Y., 51 App. Div. 233, 64 N.Y. Supp. 904; Duntz v. Duntz, 44 Barb. 459; Yaple v. Morgan, 2 Ohio C.C. 406, 1 Ohio C.D. 557 Affirmed in 25 Ohio L.J. 336; Burton v. Norwich, 34 Vt. 345; See also 37 Am. Juris. page 85, Sec. 262.

The Governor and other administrative officers of the Executive Department of the State named in the act were constituted Trustees of the Internal Improvement Fund by Chapter 610 Acts of 1855. Section 2 of that Act contemplated the conduct of law suits and legal actions, and, therefore, the act necessarily implied that the Trustees should have power and authority to employ counsel to represent them in connection with the performance of the duties with which they were and are charged. Every Act of the Legislature from that time down to the present has recognized the power and authority of the Trustees of the Internal Improvement Fund to prosecute and to defend law suits and to engage in transactions which would require the services of an attorney. The latest expression in this regard is contained in Sec. 253.02 Fla. Statutes 1941 (same F.S.A.) and is as follows:

"Said Trustees have all the rights, powers, property, claims, remedies, actions, suits and things whatsoever belonging to them, or appertaining before and at the time of the enactment hereof, and they shall remain subject to and pay, fulfill, perform and discharge all debts, duties and obligations of their trust, existing at the time of the enactment hereof, or provided in this chapter."

Section 253.04 Fla. Statutes 1941 (same F.S.A.), in part, provides as follows:

"Said Trustees may bring in the name of the said Trustees all suits in ejectment, suits for damage, and suits in trespass

which in the judgment of the said Trustees may be necessary to the full protection and conservation of the said lands, or take such other action or do such other things as may in the judgment of the said Trustees be necessary for the full protection and conservation of the said lands, and the State of Florida may join with the said Trustees in any action or suit, or take part in any proceeding when it may deem necessary, in the name of the said state through the attorney general."

This provision of the statute clearly indicates that the Attorney General is expected to be drawn into litigation as attorney in cases affecting the powers and duties of the Trustees of the Internal Improvement Fund only when and if the State of Florida joins with the Trustees in any action or suit where such intervention is deemed necessary and that in those cases he should come in representing the State of Florida as differentiated from representing the Trustees.

So, our conclusion is that the Trustees of the Internal Improvement Fund are authorized to employ counsel to represent and advise the Trustees in any matter or matters which may be incident to their duties as such Trustees.

Therefore, the decree dismissing the amended bill of complaint is affirmed.

So ordered.

CHAPMAN, C. J., TERRELL, BROWN, THOMAS, ADAMS and SEBRING, JJ., concur.