# NEWCOMB v. OGDEN CITY PUBLIC SCHOOL TEACHERS' RETIREMENT COMMISSION et al.

No. 7643.   Decided April 30, 1952.   (243 P. 2d 941.)

504

See 56 C. J., Schools and School Districts, sec. 398. Teachers, pension legislation for. 40 Am. Jur., Pensions, sec. 17; 37 A. L. R. 1162.

*Huggins & Huggins, Wade M. Johnson,* Ogden, for appellants.

*Samuel C. Powell, Derrah B. VanDyke,* Ogden, for respondent Florence Hirst Newcomb.

*Dobbs & Dobbs,* Ogden, for respondent Florence B. Drake.

WOLFE, Chief Justice.

Action for a declaratory judgment to determine the constitutionality of Chapter 91, Laws of Utah 1949, authorizing the dissolution of local teachers' retirement associations in this state. Florence Hirst Newcomb, a retired

teacher of the Ogden City public schools, brings this action for herself and all other retired teachers similarly situated. Joined as defendants are the Ogden City Public School Teachers' Retirement Commission and the individual members thereof; the Board of Education of Ogden City; all members of the Ogden Teachers' Retirement Association who voted in favor of dissolving the Association at an election held pursuant to the 1949 act mentioned above; and all members of the Association who voted against dissolution. The lower court held that the statute in question was unconstitutional for several reasons, but primarily on the ground that it impaired the vested rights of retired members of the Association.

This is the second time this matter has been before this court. The previous case, *Newcomb* v. *Ogden City Public School Teachers' Retirement Commission,* ... Utah ..., 1950, 218 P. 2d 287, was an original proceeding in this court to prohibit the Retirement Commission and its individual members from dissolving the Association pursuant to the 1949 act. A permanent writ of prohibition was refused because the Board of Education of Ogden City had not been made a party to the action, we being of the opinion that the Board was an indispensable party to any action to determine the constitutionality of that act.

The Ogden City Public School Teachers' Retirement Association was organized on or about December 19, 1933, pursuant to Section 75-29-1 et seq., Utah Code Annotated 1943. Mrs. Newcomb became a member of the Association at that time by virtue of her employment as a teacher in the Ogden public schools and, as required by Section 75-29-8, U. C. A. 1943, and her annual contract of employment with the Ogden Board of Education, she continued her membership in good standing until she retired from teaching on June 15, 1938. After a teacher retires, he or she ceases to be a member of the Association. During her years of membership, Mrs. Newcomb paid the Association all the required percentage contributions from her salary. On the

date last mentioned, having attained the age of sixty years and having taught for more than thirty-one years, she was placed upon the Association's retired list and began drawing an annuity as provided by law. From the date of her retirement until June 30, 1946, Mrs. Newcomb received annually the sum of $600 which was the maximum amount payable to any annuitant under the retirement act. For the fiscal years from July 1, 1946 to June 30, 1947 and from July 1, 1947 to June 30, 1948, she received the sums of $592.00 and $540.00 respectively. The full $600 was not paid to her for those two years due to the fact that the "current fund" of the Association, from which annuities and claims are paid, was insufficient to pay all annuities and claims in full. Section 75-29-15, U. C. A. 1943, provides that

"if at any time the funds of the retirement association are not sufficient to meet the annuities and refunds hereinbefore specified, each annuitant and claimant shall be paid his or her pro rata share of the funds that are available."

In 1949, the Legislature of this state enacted Chapter 91, Laws of Utah, 1949, permitting the termination of local teachers' retirement associations by a majority vote of the members voting at an election held to determine that question. That act provided that upon dissolution the funds and assets of the association should be distributed to members and/or annuitants and/or claimant in such manner and order as the retirement commission or District Court should determine. Pursuant thereto, the Ogden Public School Teachers' Retirement Commission called a meeting of the Retirement Association for May 24, 1949, at which time an election was held to determine whether the Association should be terminated. Approximately 300 of the 379 members were present. Of these, 212 members voted in favor of dissolution and 88 voted against it. The date of termination was set for May 31, 1949, but because of the outgrowth of litigation over the termination of the Association, dissolution has never been effected beyond the election.

With the recent growth of public employees' retirement systems in this country have come a surge of cases declaring the rights of retired employees in the various systems. As is indicated in the annotation at 137 A. L. R. 249, supplementing earlier annotations at 54 A. L. R. 943, 98 A. L. R. 505, and 112 A. L. R. 1009, there is a wide divergence of opinion among the courts on this subject. Some jurisdictions have taken the view that a pension or annuity (the terminology is not here important) granted by public authority to a retired public employee is simply a gratuitous allowance, in the continuance of which the pensioner or annuitant can have no vested right, it being terminable at the pleasure of the grantor. Other jurisdictions have declared that a pension granted to a public employee who has fully complied with all the requirements requisite to receiving a retirement allowance, viz. age, years of service, contributions from salary, etc., is a contractual allowance giving rise to certain vested rights in the retired employee which cannot be impaired by legislation or administrative rules enacted or made subsequent to the date of his retirement. Courts adopting this view do so on the theory that the providing by statute or ordinance for the payment of a pension in a certain amount upon retirement constitutes an offer to which an employee makes a valid acceptance by meeting the conditions established by law requisite to receiving the pension. The statute or ordinance becomes a part of the employee's contract of employment as though actually incorporated therein and the right to a pension becomes as much a part of the agreed compensation for the services of the employee as the monthly stipend, but it is deferred in payment until after his retirement. However, it is recognized by courts adopting both views that in the last analysis the rights of pensioners must be determined by the purpose and language of the retirement act.

In two cases which have been decided by this court, we have held, after examining the purpose and language of the

pension plan, that the employee acquired upon retirement a vested right to a pension which could not afterwards be diminished in amount. In *Schofield* v. *Zion's Co-op. Mercantile Institution,* 85 Utah 281, 39 P. 2d 342, 343, 96 A. L. R. 1083, the board of directors of a private corporation

"for the purpose of promoting the welfare of the officers and employees of this institution, and to encourage long and faithful service,"

established a pension system whereby an officer or employee who had served the institution honorably for 20 years and had attained the age of 65 years was entitled to be retired on a monthly pension based on his past salary and length of service with the corporation. The plaintiffs met the conditions of age and years of service, retired from service with the defendant corporation, and began drawing a monthly pension. Three years later, the defendant revised the pension allowances, resulting in a decrease in the sums paid to the plaintiffs. Upon appeal from a judgment for the amounts deducted, this court held, as against the contention of the defendant that the pension was a gratuity and terminable at the will of the defendant, that the holding out to the plaintiffs that if they would faithfully serve the defendant for the requisite number of years and until they had attained a certain age, they would receive a pension in a certain amount, constituted an offer on the part of the defendants which the plaintiffs had accepted by fulfilling the conditions precedent contained in the offer. With the acceptance by the plaintiffs of the defendant's offer, a contract was made which precluded the defendant from afterwards reducing in amount the pension to which the plaintiffs became entitled for life.

Nine years later the case of *Driggs* v. *Utah Teachers' Retirement Board,* 105 Utah 417, 142 P. 2d 657, was decided by this court. There we declared that the plaintiff, a retired teacher, who was receiving a retirement allowance under the Utah State Teachers' Retirement System, had the same vested right to receive a pension free from

reduction in amount after retirement as did the plaintiffs in the *Z. C. M. I.* case, even though the grantor of the pension was the state and not a private corporation as in that case.

Turning now to a consideration of the instant case, the appellants, in support of their contention that the Legislature did not impair any vested rights when it provided by Chapter 91, Laws of Utah 1949, for the dissolution of local teachers' retirement assocations, argue that on June 15, 1938, when Mrs. Newcomb retired and became entitled to receive an annuity, the Association had then the inherent power to terminate itself; that this power was a limitation upon any rights she may have acquired upon retirement; and therefore she has no legal cause for complaint because the Association has now taken steps to dissolve itself and distribute its assets to members, annuitants and claimants. Appellants refer us to Section 75-29-9, U. C. A. 1943, empowering the retirement commission to increase or decrease the rate of contribution by members and the corresponding rate of contribution by the local board of education, when the proposed modifications have been approved by the board of education and by two-thirds of the ballots cast by members voting on the proposed change in rates. Under this statute, it is argued, the retirement commission could, with the necessary approval from the Board of Education and the members of the Association, decrease the contribution rate to a point where it yielded little or no replenishing funds for the Association's treasury. thereby drying up the fund from which annuities are paid and bringing about, in effect, termination of the system. In such event, because annuitants are not guaranteed any minimum amount, but are entitled only to their pro rata share of the available funds if the Association is unable to pay all demands in full, Sec. 75-29-15, it is contended that annuitants would have no legal ground for complaint if they received only a nominal amount or nothing at all.

We agree that the rights of annuitants in local systems must be determined from the purpose and language of the act under which they were organized and by which their operations are governed, and that annuitants can have no higher rights than the limitations there ■ imposed. However, the appellants have taken too narrow a view of those rights. While the statute authorizing the retirement commission to raise or lower contribution rates is silent as to the purpose for which this power may be exercised, we are convinced that it was the Legislature's intention that the commission should exercise that authority to adjust rates as the demands of the Association varied from time to time with the objective of keeping the Association a solvent operating organization. It should be observed that Section 75-29-9 was not part of the original enabling act of 1907, but was added as an amendment in 1935, doubtlessly to meet some exigency arising in the operation of local systems. The amendment made the system more flexible by giving the commission authority to modify rates at any time after the necessary approvals were first obtained, a power which theretofore only the Legislature could exercise at its biennial sessions. For the commission to use that power to dry up the funds of the association, deprive annuitants of their allowances, and by such means to bring about a termination of the system, would clearly be contrary to the Legislature's intent.

Nor does the fact that no definite amount is *guaranteed* to annuitants by the act imply or suggest that the Legislature intended to confer upon the associations ■ the right to dissolve themselves. Section 75-29-11 provides that upon retirement, members

"shall be entitled to an annuity equal to one-half of the average annual salary for the five years next preceding retirement; *provided,* that the maximum annuity paid to any teacher * * * shall not exceed $600."

Obviously, the objective of the Legislature was that annuitants should receive a sum in the amount above specified.

From time to time the Legislature has increased the portion of teachers' salary on which contributions should be deducted in order that the associations might meet this objective. Section 75-29-15 providing for the pro-rating of available funds among annuitants and claimants when the Associations are unable to pay all annuities and claims in full in no way depreciates that objective. That provision was part of the original act of 1907 and it may have been that the Legislature reserved some doubt as to whether the associations would always be financially able to pay all demands in full. But because no definite amount was guaranteed to annuitants does not warrant the conclusion that the retirement commission was free to so manage the association that only a token payment or nothing at all could be paid to annuitants and claimants. Good faith on the part of the commission to maintain an association which could provide retirement pay for teachers was contemplated.

Having decided then that the retirement act itself as of the date of Mrs. Newcomb's retirement provided no means for the dissolution of the Association, the question next arises: Can the Legislature now amend the act and provide for termination of the associations upon the majority vote of the members and distribute the assets of the associations among the annuitants, claimants, and members? The appellants charge that the retirement system is actuarily unsound and that it does not now accomplish the purpose for which it was organized, but instead repels teachers from seeking employment in the Ogden City School District.

In jurisdictions holding that a pension or an annuity granted by public authority to a retired public employee is a gratuity, there can be, of course, no legal objection if the Legislature amends the law after an employee has retired so as to decrease in amount or entirely eliminate the pension. However, in jurisdictions holding that a pension granted to a retired public employee who has fulfilled all the conditions precedent to receiving it, is a contractual obligation, a more serious problem is encountered. Where

it has been necessary to make reductions in the amount paid to pensioners or annuitants or to make other changes in the system in order that it might be rendered actuarily sound, most, if not all, jurisdictions where the problem has arisen, have held that such changes, if reasonably necessary, afford no basis for complaint on the part of the beneficiaries. See *Talbott* v. *Independent School District,* 230 Iowa 949, 299 N. W. 556, 137 A. L. R. 234, and the cases cited therein. In *Retirement Board of Allegheny County* v. *McGovern,* 316 Pa. 161, 174 A. 400, 407, the court said:

"The charge of insolvency, when dependent upon actuarial matters, presents a factual situation which may be controlled by the Legislature. * * * [It] may from time to time * * * alter, change, amend, and render intact the actuarial soundness of the system so as to strengthen its fibers in any way it sees fit. Changes in details, such as length of service required, contributions needed, and age requirements, to keep the fund on sound actuarial practices, are essential. Flexibility in component parts in a paramount necessity to guard against changed conditions and to permit keeping abreast with actuarial science."

In the instant case, had the Legislature attempted only to make changes in local retirement systems for the purpose of strengthening them, there would be no difficulty in finding authority to support such action. But the Legislature has not chosen to amend, alter or change the systems. It has provided means whereby they may be dissolved and their assets distributed to members, annuitants and claimants. In one case in which a retirement system was teminated, provision was made for the transfer of retired pensioners from the dissolved system to a newly created system without any loss of benefits on their part, the court remarking that retired pensioners had a vested interest in retirement pay which cannot be destroyed, weakened or departed from by subsequent legislation. *Kane* v. *Policecen's Relief & Pension Fund of City of Pittsburg,* 336 Pa. 540, 9 A. 2d 739. In another case, provision was made by law for the merger of local teachers' retirement systems with the state retirement system and the legislature directed

that when the merger was accomplished and the local systems discontinued,

"the payment of all benefits to members on the retired roll at the time of discontinuance shall become the obligation of the school district in which the local system was operated prior to its discontinuance."

A tax rate sufficient to discharge in full this obligation was directed to be levied in those districts. *Board of Education* v. *City of Louisville,* 288 Ky. 656, 157 S. W. 2d 337, 344. In the absence of a provision for a substantial substitute for the loss of benefits sustained by the dissolution of a retirement system, the Supreme Court of California has held in a recent case that the dissolution is unconstitutional. *Kern* v. *City of Long Beach,* 29 Cal. 848, 179 P. 2d 799. On the other hand, the Supreme Court of Texas in the case of *City of Dallas* v. *Trammell,* 129 Tex. 150, 159, 101 S. W. 2d 1009, 1014, 112 A. L. R. 997, held that a contract of employment entered into by an employee with a city providing for the payment of a pension upon retirement is

"made subject to the reserved power of the Legislature to amend, modify, or repeal the law upon which the pension system is erected, and this necessarily constitutes a qualification upon the anticipated pension and a reserved right to terminate or diminish it."

Further, the court said:

"* * * as pensions granted to employees of the state or its muinicipalities are purely of statutory origin, the employees, in making contracts of employment under which the right to participate in the pension fund accrues, do so in contemplation of the reserved right of the Legislature to amend or to repeal the laws on which the pension systems are founded; and therefore the right to participate in the fund, even though arising from the contract, is based upon the anticipated continuance of existing laws. Under this theory, there can be no vested interest in future installments of pensions which will prevent the Legislature from repealing the law upon which the system is founded, or modifying the law in such way as to diminish the amount of future monthly payments."

The purpose of the Legislature in providing for the organization of local teachers' retirement associations was the same as its purpose in creating the state teachers' retirement system, viz. to improve

"the Utah educational system by better compensating the teachers and rewarding them for faithful and continued service, thus making the profession more attractive to qualified persons." *Driggs* v. *Utah Teachers' Retirement Board,* supra [105 Utah 417, 142 P. 2d 663.]

It is not consonant with that purpose to hold that the Legislature reserved the right to repeal the law upon which the retirement systems were founded, and thereby terminate the payment of annuities to retired teachers. This is true whether the repeal be accomplished directly by the Legislature or indirectly by the enactment of enabling legislation permitting the members of the associations to dissolve them, as was done in the case at bar. Such a reservation of right on the part of the Legislature would defeat its very purpose in providing for the organization of local systems as a teacher would have no assurance whatever of receiving retirement pay after he had fulfilled all the conditions precedent to receiving it. As was stated by the court in *Kern* v. *City of Long Beach,* supra [29 Cal. 2d 848, 179 P. 2d 803], after holding that a substantial substitute must be provided for:

"To hold otherwise would defeat one of the primary objectives in providing pensions for government employees, which is to induce competent persons to enter and remain in public employment. [citing cases] It is obvious that this purpose would be thwarted if a public employee could be deprived of pension benefits and the promise of a pension annuity would either become ineffective as an inducement to public employees or it would become merely a snare and a delusion to the unwary."

It is true that the *Kern* case involved the rights of employees who had not yet retired, but what was said there in regards to their rights applies with even greater force to retired employees who have fully qualified for a pension. The promise made to teachers that if they will serve the

public faithfully for a certain number of years and make contributions to a retirement fund from their salary, they will receive an annuity after retiring, is illusory if the Legislature can at any time repeal the retirement act and leave retired teachers with nothing but their equitable share of the assets of the association. This court in the *Driggs* case stated that when a person has accepted an offer of the State or of one of its agencies, and has met all the conditions thereof, the State or agency is bound to perform the contract the same as a private person must perform. That principle applies in this case.

The appellants suggest that because members of local systems had the privilege of joining the state teachers' retirement system from its creation in 1937 to 1947, and since 1947 have been required to belong to the state system, the Legislature has effectively provided annuitants with a substantial substitute. The evidence reveals that all but two of the plaintiffs were also members of the state system prior to their retirement and now receive retirement allowances from that system. The difficulty with the appellants' argument is that when members of local associations joined the state system their past contributions to the locals were not credited toward the purchase of an annuity in the state system. They were required to purchase their annuity with contributions made after joining the state system the same as did non-members of local system. Membership was not transferable from the locals to the state. By express provision of the state act, joining the state system did not affect their status under the local system. Section 75-29-31, U. C. A. 1943, repealed by Chap. 81, Laws of Utah 1947. Thus it can be seen that in no way was the state system a substitute for the locals but instead was an additional system which members of locals had the privilege of joining until 1947 when membership in the state system was made compulsory for them.

We are cognizant of our duty to hold legislative acts constitutional unless we are convinced beyond a reasonable doubt that they are unconstitutional. But concluding as we do that the Legislature may not provide for the termination of a retirement system unless a substantial substitute is provided for in lieu of the loss of benefits sustained by pensioners or annuitants, and that in the instant case no such substitute was supplied or exists, the unconstitutionality of Chapter 91, Laws of Utah 1949, as it affects the plaintiffs is inescapable. We express no opinion as to the constitutionality of Chap. 91 as it pertains to persons other than retired teachers in local systems.

Judgment below is affirmed. Costs to respondents.

WADE, McDONOUGH, CROCKETT and HENRIOD, JJ., concur.