Carlyle F. GRONNING, in his official capacity as Chairman, Commissioner of the Industrial Commission of Utah, Plaintiff and Respondent,

v.

Herbert F. SMART, in his official capacity as Director of Finance, Department of Finance, State of Utah, and Administrator of the State Insurance Fund, et al., Defendants and Appellants.

No. 14846.

Supreme Court of Utah.

March 8, 1977.

6. *Matchett v. Gould,* 131 Cal.App.2d 821, 281 P.2d 524 (1955).

Vernon B. Romney, Atty. Gen., Joseph P. McCarthy, Asst. Atty. Gen., Salt Lake City, for defendants and appellants.

A. Wally Sandack, Roger D. Sandack, Special Asst. Attys. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Justice:

■ Appeal from a declaratory judgment which held as constitutional certain legislative enactments appropriating funds from the State Insurance Fund to the Industrial Commission. Such an appropriation of trust funds by the Legislature is a violation of the Due Process Clause of the Fourteenth Amendment and Article I, Section 7 of the Utah Constitution, and the decision below is reversed.

The Industrial Commission is a state agency which exercises the police power of the State as it applies to employment entirely without reference to the State Insurance Fund and its duties and responsibilities are specifically enumerated in Titles 34 and 35, U.C.A.1953.

■ The Insurance Fund is a state administered mutual insurance program established by the Legislature for the purpose of insuring employers against liability for compensation and assuring to the persons entitled thereto the compensation provided by law and its purposes and functions are set forth in Title 35, Chapter 3, U.C.A.1953. The Insurance Fund is not an arm of the State to enforce requirements calling for safe places of employment, safety devices, safeguards, work methods and processes. These are clearly functions of the Industrial Commission and such exist entirely independent of the provisions of law assuring recovery of monies due to injured workmen.[1]

Respondent's position is that since in the administration of the Insurance Fund it is authorized to employ "inspectors" that it necessarily follows that *safety* inspectors hired by the Industrial Commission should be partially supported by appropriation of monies from the Insurance Fund. This is an untenable position since the conduct of a safety program requiring such inspectors is a general duty of the Industrial Commission and is not carried on at the request of or for the particular benefit of the Insurance Fund. Also, a distinction is clearly necessary between the "inspectors" the statute allows the Insurance Fund to appoint and the "safety inspectors" that are absolutely required to conduct the safety program statutorily imposed upon the Industrial Commission which only incidentally affects the Insurance Fund.

The previous announcement of this court in *Chez v. Industrial Commission*,[2] is dispositive of this appeal and the cases cited by respondent in no way alter the holding therein. In that case we were directly faced with a determination of the specific nature of the Fund. The Fund had purchased bonds issued by the Town of Scipio which sought to compromise the obligation owing thereon by a payment over to the Industrial Commission. The question then becomes whether a debt or obligation owing to the Fund was an obligation or liability to the *State*. We held that a debt owing the Fund was not an obligation due the State, and in doing so determined the status or nature of the funds received from employers, stating:

1. *American Fuel Co. v. Industrial Comm.*, 55 Utah 483, 187 P. 633.

2. 90 Utah 447, 62 P.2d 549.

. . . The *employer* really *pools his premiums* in the State Fund to create a fund for the payment of an obligation for which it is liable. *It is a common fund belonging to the participating employers.* It is therefore not derived from anything owing to the state nor paid out on behalf of any state obligation. . . .

. . . The fund is publicly administered, but its debtors are not debtors to the state. *It belongs, not to the state, but to the contributing employers* for their mutual benefit. . . .

. . . while a public fund in the sense of being administered by a public body *is not public money* in the sense that it is money of the state to be used for and on behalf of the state for a state expenditure. . . . [Emphasis added.]

The *Chez* case, supra, was recently followed by the Supreme Court of Oklahoma in interpreting the status of a very similar State Insurance Fund created there.[3]

The money in the Fund is not public money subject to appropriation to meet expenses of government. It is a trust fund to be used to meet liabilities of employers when an employee is entitled to compensation. If the appropriation were to be made it would amount to a seizure of trust funds for State purposes without due process of law.[4]

ELLETT, C. J., and CROCKETT, MAUGHAN and WILKINS, JJ., concur.

---

**3.** *Moran v. State ex rel. Derryberry*, Okl., 534 P.2d 1282 (1975).

**4.** *Tolman v. Salt Lake County*, 20 Utah 2d 310, 437 P.2d 442 (1968).