Robert B. HANSEN, Attorney General, Plaintiff and Appellant,

v.

UTAH STATE RETIREMENT BOARD and Utah State Retirement Fund, et al., Defendants and Respondents.

Robert B. HANSEN, Attorney General, Plaintiff and Appellant,

v.

UTAH STATE RETIREMENT BOARD and Utah State Retirement Fund; Utah State Industrial Commission and Utah State Insurance Fund; University of Utah, for and in behalf of the University of Utah Hospital for the University Medical Center; University Medical Center Trust Fund, First Security Bank of Utah, Trustee, Defendants and Respondents.

Nos. 16714, 16560 and 16851.

Supreme Court of Utah.

Aug. 27, 1982.

Bernard M. Tanner, William G. Gibbs, Richard L. Dewsnup, Asst. Attys. Gen., Salt Lake City, for plaintiff and appellant.

William T. Evans, Asst. Atty. Gen., Salt Lake City, for Univ. of Utah.

Frank V. Nelson, Asst. Atty. Gen., Salt Lake City, for Industrial Com'n.

Mark A. Madsen, Asst. Atty. Gen., Salt Lake City, for Retirement Bd.

James R. Black & Robert Moore, Salt Lake City, for State Ins. Fund.

Merlin Lybbert, Salt Lake City, for Medical Center.

STEWART, Justice:

The Utah Attorney General filed this suit seeking 1) a declaratory judgment that the Utah Constitution has conferred exclusive authority on him to act as legal adviser to the defendants, and 2) an injunction prohibiting defendants from employing counsel pursuant to various statutory provisions. The complaint alleges that the defendants are state agencies, state funds, quasi-state agencies, and trust and insurance funds. The Attorney General appeals adverse summary judgments.

The complaint characterizes the defendants as follows: Utah State Retirement Board, an independent state agency; Utah State Retirement Fund, a quasi-state agency fund; the Utah State Industrial Commission, a state agency; Utah State Insurance Fund, a quasi-state agency fund; the University of Utah Hospital, a state agency that established the Medical Center Trust Fund, which is administered by First Security Bank as Trustee, to provide medical malpractice insurance.

The Attorney General contends that he has exclusive constitutional authority to act as legal adviser to the defendants. The defendants contend to the contrary and assert that the Legislature has constitutionally authorized each agency to hire its own counsel. In addition, the Retirement Fund, Insurance Fund, and Medical Center Trust Fund affirmatively contend that they are in effect private trusts administering private trust funds, not public monies.

The basic issue to be resolved on this appeal is the meaning of the term "state officers" as used in Article VII, § 16.

## I. THE POWERS OF THE ATTORNEY GENERAL

At statehood the office of Attorney General was established as an office within the executive branch of government by Article VII, § 1 of the Constitution. *Meyers v. Second Judicial District Court,* 108 Utah 32, 156 P.2d 711 (1945). As originally written, Article VII, § 1 stated: "The Executive Department shall consist of Governor, Secretary of State, State Auditor, State Treasurer, and Attorney General ...."[1]

The executive article, Article VII, was drafted to give effect to the fundamental principle that the organic law establishing the basic framework of government for this State should provide sufficient flexibility and latitude, within the limitations of certain fundamental restrictions, so that government could be organized to cope with the inevitable and unforeseeable exigencies that would arise. In part, the powers conferred on the constitutional executive officials were constitutionally based. However, the framers also conferred on the Legislature broad authority to shape the powers and authority of those officials as the needs of the times dictated. The 1980 amend-

---

1. Article VII, § 1 as amended in 1980, now states:

 The elective constitutional officers of the Executive Department shall consist of Governor, Lieutenant Governor, State Auditor, State Treasurer, and Attorney General.... They shall perform such duties as are prescribed by this Constitution and as provided by law.

ments to the executive article reaffirmed, and to some extent extended, the same general principle setting forth the powers and duties of the constitutionally established executive officers.[2]

Thus, except for the powers of the Governor,[3] the executive article tersely states in one section certain basic or core duties of each constitutional officer, and in addition, provides that the Legislature may add thereto certain powers and responsibilities. *See, e.g.,* § 14, specifying the duties of the Lieutenant Governor;[4] § 15, specifying the duties of the Auditor and Treasurer;[5] and § 17, specifying the duties of the Superintendent of Public Instruction.[6] Section 16 establishes the powers of the Attorney General in the following language:

> The Attorney General shall be the legal adviser of the State officers, except as otherwise provided by this Constitution, and shall perform such other duties as provided by law.

The Attorney General contends that the term "state officers" as used in § 16 encompasses all state employees. The defendants rely on *Hansen v. Legal Services Committee of the Utah State Legislature,* 19 Utah 2d 231, 429 P.2d 979 (1967), in support of the argument that the term "state officers" should be narrowly construed.

In *Hansen* the Court held that the Legislature, by appointing its own legal adviser to assist in the performance of the Legislature's constitutional duties, had invaded the constitutional authority of the Attorney General. The Court defined the term "state officers" as used in Article VII, § 16 (then Article VII, § 18) to mean the same as it means in Article XXIV, § 12 of the Constitution.[7] The Court therefore held that since Senate and House members are referred to in Article XXIV, § 12 as "state officers," the Attorney General had exclusive constitutional power under Article VII, § 16 to act as legal adviser to the Legislature.

■ After a careful reanalysis, we are of the view that *Hansen* does not provide a sound basis for defining the term "state officers." Article XXIV, § 12, the lynchpin of the *Hansen* opinion, provides:

> The State Officers to be voted for at the time of the adoption of this Constitution, shall be a Governor, Secretary of State, State Auditor, State Treasurer, Attorney General, Superintendent of Public Instruction, Members of the Senate and House of Representatives, three Supreme Judges, nine District Judges, and a Representative to Congress.

Clearly, Article XXIV, § 12 was not intended to define the term "state officers" wherever it appeared in the Constitution. On its face, Article XXIV, § 12 was intended only to provide for launching the new state government by specifying those "state officers" who were initially to stand for election. To construe Article XXIV, § 12 to

---

**2.** A constitutional amendment substantially revising the executive article of the Constitution was ratified in 1980. In addition to other changes the office of Secretary of State was changed to the office of Lieutenant Governor. Prior to the amendment, Article VII, § 18 established the powers of the Attorney General. The pertinent provision is now Article VII, § 16. *See* Senate Joint Resolution No. 7, 1979 Utah Laws 1318.

**3.** Throughout Article VII various powers and responsibilities are conferred on the Governor. *See, e.g.,* §§ 4, 5, 6, 7, 8, 9, 10, 11, and 12. Because the "executive power" of the State is vested in the Governor, § 5, his powers and responsibilities are dealt with somewhat differently than the other constitutional executive officers.

**4.** Article VII, § 14 provides:

> The Lieutenant Governor shall serve on all boards and commissions in lieu of the Governor whenever so designated by the Governor, shall perform such duties as may be delegated by the Governor, and shall perform such other duties as may be provided by law.

**5.** Article VII, § 15 provides:

> The State Auditor shall perform financial post audits of Public Accounts, except as otherwise provided by this Constitution, and the State Treasurer shall be the custodian of public moneys; and each shall perform such other duties as provided by law.

**6.** Article VII, § 17 provides:

> The Superintendent of Public Instruction shall perform such duties as provided by law.

**7.** See *supra,* note 2.

define the term "state officers" as used in other constitutional provisions and in entirely different contexts would violate basic rules of constitutional interpretation and would produce anomalous consequences violative of such basic principles as the doctrine of separation of powers. *See* Article V, § 1. Clearly, it is as impermissible for the Attorney General to act as legal adviser to the judiciary in the performance of the judicial function,[8] as it is for him to act as legal adviser to the Legislature. Furthermore, the term "state officers" as used in Article XXIV, § 12, includes the "Representative to Congress." That officer, however, is not an officer of state government at all, but of the federal government.

Finally, the specific holding in *Hansen* was overturned by a constitutional amendment ratified in 1972 that amended Article VI, § 32 expressly to authorize the Legislature to employ its own legal counsel to assist in performing its legislative duties.

 Although the constitutional power of the Attorney General is to act as "legal adviser" to "state officers," the text of Section 16 does not permit the term "state officers" to be read in its most expansive meaning to include all employees of state government. In the first place, the office of Attorney General is by virtue of specific constitutional language an executive department office. Article VII, § 1. As such, it naturally follows that its constitutional duties should be limited to rendering advice to executive department officials. Furthermore, to interpret the phrase "state officers" to vest plenary authority in the Attorney General to act as legal adviser to all state officers and agencies would effectively nullify the power conferred by Section 16 on the Legislature to add to and shape the powers of the Attorney General. The result would be to undermine the intended flexibility accorded the Legislature to provide legal counsel to various state agencies whose functions may require special legal counsel or whose duties could re-

sult in conflicts of interest. The construction contended for by the Attorney General would also require the inadmissible conclusion that the Attorney General is to act as legal adviser to officials of both the legislative and the judicial branches of government.

Other provisions in the Constitution also use the term "state officer," but they do not require a more expansive definition of that term than is used in Article VII, § 16. The term "state officers" is used in a variety of contexts, each for a different purpose and each requiring a construction in accord with that purpose. *Cf. State v. Yelle,* 52 Wash.2d 856, 329 P.2d 841 (1958). Thus, for example, Article VII, § 18 uses the term broadly to provide that compensation should be paid those executive branch officers enumerated in Article VII, § 1, as well as "such other State and District officers as provided for by law ...."[9] The terms "state officers" or "state office" are used in still another context with a much narrower meaning in Article VII, § 9, which provides for interim appointments by the Governor under certain conditions. The term is also used with a restricted meaning in Article VII, § 10, which provides for senatorial confirmation of certain state officers appointed by the Governor. In sum, the term "state officers" has been used in the Constitution to specify different groups of state officers, and there is no textual basis for choosing one meaning over another to resolve the issue in this case.

 Therefore, in light of the constitutional language, as well as the nature and history of the office of Attorney General, *see* 7A C.J.S. *Attorney General* § 7 (1980), we conclude that the framers intended to confer constitutional power on the Attorney General only with respect to executive department offices. Thus, the *constitutional* authority of the Attorney General is to act as legal adviser to the constitutional executive officers referred to in Article VII, i.e.,

---

8. There are occasions, of course, when the Attorney General may properly represent members of the legislative or judicial branches in litigation without violating the doctrine of separation of powers.

9. Prior to the 1980 revision of Article V, the pertinent section of Article VI was § 20.

the Governor, Lt. Governor, Auditor, Treasurer, and the Superintendent of Public Instruction, the departments over which they have direct supervisory control, and to the other state executive offices referred to in Article VII, insofar as the officers of those offices act within the scope of the duties of such office.

Our conclusion as to the constitutional power of the Attorney General with respect to state officers is consistent with precedents from other jurisdictions. The Washington Supreme Court in *State v. Yelle,* 52 Wash.2d 856, 329 P.2d 841 (1958), in construing a virtually identical constitutional provision describing the powers of the Attorney General, has reached a conclusion similar to the one we reach. *See also Watson v. Caldwell,* 158 Fla. 1, 27 So.2d 524 (1946); *Holland v. Watson,* 153 Fla. 178, 14 So.2d 200 (1943); *Saint v. Allen,* 172 La. 350, 134 So. 246 (1931).

In addition to the power conferred by the Constitution, the Attorney General also enjoys other broad powers conferred pursuant to Article VII, § 16 by the Legislature. U.C.A., 1953, § 67–5–3 confers sweeping authority on the Attorney General to perform "legal services for any agency of state government." In pertinent part that provision states:

> The attorney general may assign his legal assistants to perform legal services for any agency of state government.... As used in this act "agency" means any department, division, agency, commission, board, council, committee, authority, institution, or other entity within the state government of Utah.

The Attorney General also has broad litigating authority. Section 67–5–1 provides:

> It is the duty of the attorney general: (1) To ... prosecute or defend all causes to which the state or any officer, board or commission thereof in an official capacity

is a party; and he shall have charge as attorney of all civil legal matters in which the state is in anywise interested.

However, the broad powers conferred by Section 67–5–3 must be read in juxtaposition with statutes authorizing certain agencies to employ independent counsel and the implied limitation provided in Section 67–5–5 which states:

> *Except where specifically authorized by the Utah Constitution, or statutes,* no agency shall hire legal counsel, and the attorney general alone shall have the sole right to hire legal counsel for each such agency. (Emphasis added.)

■ In addition to constitutional and statutory authority, the Utah Attorney General, like attorneys general of numerous other states, has common law powers.[10] *State v. Jiminez,* Utah, 588 P.2d 707 (1978); *Hansen v. Barlow,* 23 Utah 2d 47, 456 P.2d 177 (1969). However, those powers are not constitutionally rooted and therefore do not expand the power conferred by Article VII, § 16. *Meyers v. Second Judicial District Court,* 108 Utah 32, 156 P.2d 711 (1945). The source of the common law power lies in the State's statutory adoption of the common law which has been in effect, except as modified by statute, since statehood. 1898 Revised Statutes § 2488; 1907 Compiled Laws of Utah § 2488. The present provision is found in § 68–3–1.[11] *See also Hilton v. Thatcher,* 31 Utah 360, 88 P. 20 (1907); *Late Corporation of the Church of Jesus Christ of Latter-day Saints v. United States,* 136 U.S. 1, 10 S.Ct. 792, 34 L.Ed. 478 (1890).

■ Of course, where a conflict arises between the common law and a statute or constitutional law, the common law must yield. Utah Code Ann., 1953, § 68–3–2;[12] *Rio Grande Western Railway Co. v. Salt Lake Investment Co.,* 35 Utah 528, 101 P.

---

10. *See generally* 7A C.J.S. *Attorney General* § 7 (1980).

11. Section 68–3–1 provides:
 The common law of England so far as it is not repugnant to, or in conflict with, the Constitution or laws of the United States, or the Constitution or laws of this state, and so

far only as it is consistent with and adapted to the natural and physical conditions of this state and the necessities of the people hereof, is hereby adopted, and shall be the rule of decision in all courts of this state.

12. *Id.*

586 (1909); *In re Garr's Estate,* 31 Utah 57, 86 P. 757 (1906). The principle has been applied specifically with respect to the common law powers of the Attorney General. *Florida ex rel. Shevin v. Exxon Corp.,* 526 F.2d 266 (5th Cir.1976).

The exact extent of the Attorney General's common law powers need not now, however, be decided because the issues in this case turn on constitutional and statutory provisions.[13] Whether the Attorney General has the power to represent the defendants in this case depends on whether the defendants are executive department officials, and if not, whether the Legislature has authorized defendants to employ independent counsel.

## II. THE POWERS AND FUNCTIONS OF DEFENDANTS

### A. Utah State Retirement Board and Trust Fund

The Utah State Retirement Office is "administered under the general direction of the retirement board." § 49–9–2. The board consists of six persons to be appointed on a non-partisan basis and the State Treasurer as an ex officio member. However, the Retirement Office is specifically established as an "independent state agency and not a division within any other department." § 49–9–2. The Board members "serve as investment trustees of the Utah state retirement fund" and have general direction over the Retirement Office. § 49–9–3.

The Retirement Board administers the 1) Utah State Retirement Act, § 49–10–1 *et seq.;* 2) Utah Judges' Retirement Act, § 49–7a–1 *et seq.;* 3) Utah Firemen's Retirement Act, § 49–6a–1 *et seq.;* and 4) Utah Public Safety Retirement Act, § 49–11–1 *et seq.* Each system has different retirement standards, contribution rates, withdrawal rates, and pension benefits. The various funds are administered as a common trust fund, known as the Utah State Retirement Fund, solely for the benefit of the beneficiaries and not for the public at large. Some 80 percent of the benefi-

ciaries are not state employees, but employees of municipalities or counties. Each fund is required by statute to pay its proportional share of the administrative costs. § 49–9–5. No state funds are appropriated to meet any administrative costs.

Investments are not subject to control of the Board of Examiners. § 49–9–12(2). Section 49–9–4 authorizes the executive director of the Retirement Board to employ attorneys to assist in the administration of the retirement systems. Legal fees and other general administrative costs are to be paid from the various funds on a prorated, cost-of-service basis. § 49–9–5.

In a formal opinion, No. 78–007, the Attorney General has ruled that the Retirement Fund was not a state fund but a public trust fund and that as such the fiduciary responsibilities of the Board "would be in conflict with control exercised by the state auditor or other public official."

### B. Industrial Commission and State Insurance Fund

The Industrial Commission administers the Workmen's Compensation Act, the Occupational Disease Disability Law, and the Employment Security Act, among other responsibilities. The Commission is an administrative agency, *Aetna Life Ins. Co. v. Industrial Commission of Utah,* 73 Utah 366, 274 P. 139 (1929), with administrative, quasi-judicial, and quasi-legislative powers. It can sue and be sued in its own name. § 35–1–2; *Industrial Commission v. Evans,* 52 Utah 394, 174 P. 825 (1918). It is not a body within the executive branch of government, but rather an independent agency.

Section 35–1–32 authorizes the Commission to appoint independent legal counsel to prosecute or defend any legal action within or concerning its jurisdiction. Section 35–1–32 states:

The commission may with the approval of the governor appoint a representative to act as special prosecutor or to defend

---

**13.** For a discussion of some of the common law powers exercised by the Attorney General, see Oaks, *Trust Doctrines in Church Controversies,* 1981 B.Y.U.L.Rev. 805.

in any suit, action, proceeding, investigation, hearing or trial relating to matters within or concerning its jurisdiction. Upon the request of the commission, the attorney general or the county attorney of the county in which any investigation, hearing or trial had under the provisions of this title is pending, shall aid therein and prosecute, under the supervision of the commission, all necessary actions or proceedings for the enforcement of this title.

*See also* § 35–2–49 and § 35–4–20.

Closely associated with the State's workmen's compensation scheme is the State Insurance Fund. Section 35–3–1 authorizes the creation of the State Insurance Fund to provide workmen's compensation insurance to employers for the protection of their employees. The Director of the Department of Administrative Services [14] now administers the Fund, and the State Treasurer, also an executive department official, is the custodian of all monies in the State Insurance Fund, § 35–3–13. The Director is authorized by statute to hire attorneys and other professional experts to assist in the administration of the Fund. § 35–3–1.[15] All administrative costs of the Fund are borne by the Fund itself, including attorney's fees. *Id.* The Department of Administrative Service is an office within the executive branch of government.

The Insurance Fund resembles a private insurance company that collects insurance premiums from employees and pays out to employees insurance benefits pursuant to the Workmen's Compensation Act and the Occupational Disease Act. *See State Tax Commission v. Department of Finance,* Utah, 576 P.2d 1297 (1978); *Gronning v. Smart,* Utah, 561 P.2d 690 (1977); *Chez v. Industrial Commission of Utah,* 90 Utah 447, 62 P.2d 549 (1936). In *State Tax Commission v. Department of Finance, supra,* this Court recognized that the Fund may

enter into contracts and has the legal capacity to sue and be sued.

The Industrial Commission also administers the Unemployment Compensation Act for which there is "a special fund, separate and apart from all public moneys or funds of this state . . . ." § 35–4–9(a). The State Treasurer is the treasurer and custodian of the Fund and administers the Fund "in accordance with the directions of the commission . . . ." § 35–4–9(b). The Security Administration Fund is essentially a trust fund. To assist in the administration of the Unemployment Compensation Act, the Legislature has authorized the Commissioner to appoint attorneys. Section 35–4–11(d) provides:

> The commission shall appoint on a nonpartisan merit basis, fix the compensation, and prescribe the duties and powers of such officers, accountants, attorneys, experts, and other personnel as may be necessary in the performance of its duties.

C. University of Utah and University of Utah Medical Center

The University of Utah has constitutional status and is a legal entity with the status of a body corporate. *State v. Candland,* 36 Utah 406, 104 P. 285 (1909). Article X, § 4 of the Constitution provides:

> The location and establishment by existing laws of the University of Utah . . . are hereby confirmed, and all the rights, immunities, franchises and endowments heretofore granted or conferred, are hereby perpetuated unto said University . . . .

The University operates the University of Utah Hospital at the University of Utah Medical Center. The Medical Center provides educational services to the University of Utah and receives some State funding, but it is primarily funded through receipts from patient care and federal funds.

---

**14.** Section 35–3–3 states that the Commission of Finance has the responsibility for administering the State Insurance Fund. In 1981, however, that provision was impliedly repealed by an act reorganizing a part of the executive branch of government. See 1981 Laws of Utah ch. 257. The responsibility for administration of the Fund was transferred to the Director of the Department of Administrative Services, § 63–1–5 (Supp.1981). *See also* § 63–1–10 (Supp.1981).

**15.** That authority was transferred to the Director by § 63–1–10.

A trust fund was established by the University of Utah, on behalf of the Medical Center, with First Security Bank of Utah as trustee, to provide self-insurance for the Medical Center against malpractice and other casualty claims. The purpose of establishing the Fund was to avoid the cost of commercial malpractice insurance. The Fund is financed solely from a portion of patient care revenues. The Medical Center, because it participates in several federal assistance programs for which it receives federal funds, is subject to various federal rules and regulations, and the trust was established pursuant to certain of those regulations. Those regulations require that the trustee have legal title to the Fund and that it cannot be related to the health care provider either through ownership or control. No State funds are appropriated to the trust.

The trust agreement between the University and the bank authorizes the bank, as trustee, to employ and pay from the trust fund, attorneys and others as may be necessary for the effective administration of the self-insurance program, consistent with applicable regulations of pertinent federal agencies and to pay from the trust fund all costs, expenses, or other liabilities that may be incurred by the trustee in connection with the trust.

### III. AUTHORITY OF DEFENDANTS TO EMPLOY COUNSEL

None of the defendant agencies as such is an executive department agency. For various reasons the Legislature has established the Industrial Commission, the State Retirement Board and the retirement funds it administers, and the State Insurance Fund as independent agencies. Likewise, the University of Utah, which enjoys a degree of constitutionally rooted independence, is not an executive department agency.[16]

As to each defendant, the Legislature has conferred specific statutory authority authorizing the employment of independent counsel. Section 35–1–32 authorizes the Industrial Commission to appoint counsel, with the approval of the Governor, and § 35–4–11 authorizes the Commission to appoint attorneys to assist in the administration of the Unemployment Compensation Act. The Utah State Insurance Fund is authorized to employ independent counsel pursuant to § 35–3–1. The Retirement Board is empowered to hire legal counsel pursuant to § 49–9–4. Under the authority of § 63–30–28 (Supp.1981), the University of Utah is authorized to purchase insurance "by establishing a trust account under the management of an independent private trustee having authority ... to expend both principal and earnings of the trust account solely to pay the costs of investigation, discovery, and other pretrial and litigation expenses including attorneys' fees."

Thus, the authority for each defendant to hire independent counsel has a clear statutory foundation. The statutes providing such authorizations fall within the exception, *see* § 67–5–5, to the general authority of the Attorney General to perform legal services for "any agency of state government." § 62–5–3.

It is, however, readily apparent that the Director of the Department of Administrative Services is an executive department official acting under the general supervision and control of the Governor, and that the State Treasurer is a constitutional executive officer. Thus, they are state officers within the meaning of Article VII, § 16. Therefore, as a general proposition, it is within the constitutional power of the Attorney General to act as legal adviser to

---

**16.** In *People v. Barrett*, 382 Ill. 321, 46 N.E.2d 951 (1943), the Court addressed an issue somewhat similar to that with which we are here confronted:

> [Trustees of the university] are not state officers in the sense that the Attorney General is their legal advisor or representative, as contended by respondents in this case ....

> In the sense that it is a department or branch of the state government the University of Illinois is not an agency or instrumentality of the state. It is a separate corporate entity, which functions as a public corporation.

*Id.* at 346–347, N.E.2d at 964.

those officers when they perform executive department functions. Nevertheless, we do not think the functions performed by the Director and the Treasurer with respect to the Insurance Fund and by the Treasurer with respect to the Retirement Board and the Unemployment Compensation Fund require us to hold unconstitutional those statutes authorizing the employment of independent counsel for the benefit of those entities.

The State Insurance Fund operates essentially as a private insurance company; it receives no public moneys and pays its own administrative expenses from the premiums received. The moneys paid into the Fund do not belong to the State but in effect to contributing employers. *Gronning v. Smart*, Utah, 561 P.2d 690 (1977). The funds are in effect held as trust funds for an insurance program which is designed to protect private persons. The same is true of the Unemployment Compensation Fund. As for the Treasurer's participation on the Retirement Board, it is clear that the Legislature intended that the agency be independent from the executive branch. The Treasurer's participation does not transform that agency into an executive branch agency. Thus, the Director and the Treasurer, in performing the assigned duties, do not perform responsibilities that properly belong to the executive department. Rather, they perform duties for essentially independent state entities. Hence, the Constitution does not require that the Attorney General act as legal adviser to the entities in question.

Affirmed. No costs.

HALL, C.J., and HOWE, J., concur.

CROCKETT, Retired Justice (concurring with comments):

I concur with the main opinion. However, in my view there is a somewhat different rationale, grounded on fundamental principles, which supports its conclusion, and which I think is of sufficient significance and applicability to justify stating separately.

The first of those principles is that due to the respect that should be accorded the concept of the separation of powers in our system of government, the judiciary should exercise great restraint in intruding into the legislative prerogative. Consistent with that policy, there is indulged a strong presumption in favor of constitutionality, which is overcome only when it is abundantly clear that the legislative enactment is in contravention of some constitutional provision.[1]

In regard to the authority of the legislature relating to the enactments in question, it is further important to bear in mind that the legislature is constitutionally vested with the power to make the laws for this sovereign state; and thus has inherently the power to enact all laws essential to the carrying on of the purposes of government, except only as expressly prohibited or limited by constitutional provisions.[2]

With the above-stated general propositions in mind, attention is focused upon the challenge to the validity of the several legislative enactments which authorize the defendant state agencies to employ adequate staffs, including attorneys, to carry out their legally imposed responsibilities.

In support of his challenge, plaintiff cites and relies on § 16, Art. VII of our Constitution, which provides that:

The Attorney General shall be the legal advisor of state officers, and shall perform such other duties as may be provided by law.

He places emphasis on the word "shall"; argues that it is mandatory; and that therefore the just-quoted provision gives him the sole and exclusive right and duty to act as attorney for defendant entities and

1. *Lehi City v. Meiling, City Recorder,* 87 Utah 237, 48 P.2d 530 (1935); *Newcomb v. Ogden City Public School Teachers Retirement Commission, et al.,* 121 Utah 503, 243 P.2d 941 (1952).

2. See statement in *Wood v. Budge,* 13 Utah 2d 359, 374 P.2d 516 (1962) and see *Kimball v. Grantsville City,* 19 U. 368, 57 P. 1, 45 L.R.A. 628 (1899); said in awareness of possible limitations in Enabling Act, not applicable here, see *Jensen v. Dinehart,* Utah, 645 P.2d 32 (1982).

prohibits the legislature from authorizing them to employ their own attorneys.

In analyzing that contention, it is pertinent to observe that the term "shall" is a flexible one. This is clearly revealed by reference to that comprehensive lexicon of the law, Words and Phrases. It contains several pages of case references to the word "shall," a perusal of which indicates that it is sometimes used in the mandatory sense and sometimes merely as directory or permissive, leading to the conclusion that its meaning is to be determined from the context in which it is used and the purpose sought to be accomplished.[3]

Typical of numerous cases therein listed as supporting that view are *In re Norrell's Estate,* 139 N.J.Eq. 550, 52 A.2d 407, 410 (1946), wherein the court states that the word "shall" in a statute is to be construed as merely permissive when no public benefit or private right requires it to be given an imperative meaning. Our own Court has recognized the same proposition. In the case of *Bird and Jex Co. v. Funk,* 96 Utah 450, 85 P.2d 831 (1939), it was held that "shall" as used in a statute relating to the authority of our Liquor Control Commission to regulate advertising is merely permissive and not mandatory.

Applicable to the question as to which meaning is to be given the word "shall" in the provision under scrutiny is the rule of statutory construction: that where there is a choice as to the interpretation and application of a statute, it should be so construed and applied as to make it constitutional, in preference to one which would make it invalid.[4] This same principle of harmonious reconciliation in favor of validity has reciprocal effect in considering constitutional provisions in relation to legislative enactments. It is submitted that if the rules hereinabove stated are applied to the problem presented by plaintiff's contention it will be seen that an entirely reasonable understanding of the provision of § 16, of Art. VII is that the Attorney General is simply authorized and given the responsibility of being legal advisor to state officers; and more specifically, of controlling importance on the problem here: there is nothing in its language which expressly states or necessarily implies any prohibition upon the inherent powers of the legislature to provide for the adequate staffing of state institutions, including attorneys, where that is essential to the carrying out of responsibilities imposed upon them.

On the grounds stated in the main opinion, and the additional grounds stated herein, I join in affirming the rulings of the district courts: that the legislature did not transgress its constitutional prerogative in the enactments under attack herein.

OAKS and DURHAM, JJ., do not participate herein.

---

**3.** To the same effect, see 80 C.J.S. p. 138 and cases there cited.

**4.** *Wagner v. Salt Lake City,* 29 Utah 2d 42, 504 P.2d 1007, 1012 (1972); *Norville v. State Tax*

*Commission,* 98 Utah 170, 97 P.2d 937 (1940); *Treffry v. Taylor,* et al., 67 Wash.2d 487, 408 P.2d 269 (1965).